# Exhibit A

EMPLOYMENT AGREEMENT

This Employment Agreement is made and entered into by and between the following "Parties", and is deemed effective by them as of __1 Sep__, __17__ (Employee's first date of employment with Company):

"Company": Banasky Insurance, Inc.
807 E Pacific Dr
American Fork UT 84003

"Employee": Brooks C Houghton
3443 N 1270 W
Pleasant Grove UT 84062
SSN: XXX-XX-8662

WHEREAS, Company is engaged in the insurance business, and Employee has skills and experience helpful to Company; and

WHEREAS, Company desires to employ and retain the unique skills, experience, and services of Employee on a full-time, "at will" basis; and

WHEREAS, Employee desires to work for Company in that capacity on the terms and conditions set out in this Agreement.

THEREFORE, for and in consideration of Ten Dollars ($10.00) and Employee's continued employment with Company, and the mutual promises set forth in this Agreement, Company and Employee agree as follows:

1. Employment. Company hereby employs Employee as a __Sr Vice President__, on a full-time, "at will" basis (generally __40__ hours per week), subject to termination by either party at any time pursuant to Paragraph 9 below. The "at will" nature of this relationship may only be changed in a writing signed by both parties.

2. Duties. Employee shall perform such duties and work on such projects as may be assigned to Employee by the officers of Company from time to time, which duties generally shall be typical of the duties that normally fall within the responsibilities of the position for which Employee is being employed.

3. Exclusive Service. Employee shall devote Employee's full business time to the business and affairs of Company and shall not render compensated services to any other person or entity, except for such non-competing part-time work as may be pre-approved in writing by Employer and which does not interfere with Employee's commitments undertaken in this Agreement. Employee shall devote all of Employee's time, energy, and skill to the affairs of the Company during regular business hours and such additional hours as may reasonably be required to fulfill the responsibilities of the position for which Employee is being employed and to develop Company's business.

4. Loyalty and Integrity. Employee's relationship to Company is one of trust and confidentiality. Employee acknowledges Employee's duty and loyalty to Company and shall act at all times in the best interests of the Company, and shall avoid and promptly disclose any actual or potential conflict of interest. Employee shall exercise Employee's best efforts to promote the interests of Company and shall discharge Employee responsibilities in a diligent, faithful, and professional manner, consistent with

sound business practices. In carrying out Employee duties to or on behalf of Company, Employee shall act with the utmost integrity and shall conform to the highest standards of Employer's industry. Employee shall comply with all policies and procedures established by Company from time to time and shall not act in any manner that is likely to harm or tarnish Company's goodwill. While employed by Company, Employee shall not render any services of any nature to any other person or entity which is in any manner competitive with the business of Company. Employee acknowledges and agrees that all customers, customer lists, contacts, and intellectual property developed by the Employee during the term of Employee's employment with the Company shall be and remain the property of the Company.

5. Compensation. Company shall compensate Employee for all services rendered by Employee during the term of this Agreement as agreed upon from time to time by Company and Employee. Company shall provide to Employee certain other employment benefits as agreed upon from time to time by Company and Employee. Such compensation and benefits may be documented from time to time on the attached Exhibit "A."

6. Expenses. Company shall reimburse Employee for all reasonable, pre-approved, out-of-pocket expenses incurred on behalf of Company in connection with ordinary and necessary activities performed in the course of Employee's employment, provided that Employee adequately documents such expenses and complies with any and all Company policies and procedures relating to such expenses.

7. Termination of Employment; "At Will" Status.

    Both Company and Employee understand and agree that Employee is employed by Company as an "at will" employee, which means that either Employee or Company may terminate Employee's employment with the Company at any time and for any or no reason, without any consequent or residual liability on the part of either party hereto. Any other provision of this Agreement notwithstanding, Company shall pay to Employee all compensation that has accrued through the date of termination and any other payments or benefits to which Employee may be entitled under this Agreement.

    The parties acknowledge that certain obligations under this Agreement will continue after Employee ceases to be employed by Company. Accordingly, this Agreement (in its entirety) may be terminated only by a writing signed by both parties. It shall not terminate automatically upon the expiration of any period of employment specified herein or upon any termination of Employee's employment with Company.

8. Covenant of Confidentiality.

    A. As used in this Agreement, the term "Confidential Information" means any and all trade secrets and other confidential information and know-how related to Company, its business or its products, including without limitation any and all (i) methods, processes, formulas, designs, inventions, materials, operating instructions, sales techniques, computer programs, and research information; (ii) information regarding projects, programs, and sales; (iii) names and addresses of past and present customers, pricing data, sources of supply, internal procedures, systems, methods, forms, manuals, financial data, price lists, market surveys, plans, customer service information, and marketing information; and (iv) all other information relating to Company, its business, or its products that is not generally known to the public. The terms "Confidential Information" shall also include information in Company's possession or control that is received from a third party or related to the business of a third party if such information is marked "CONFIDENTIAL", "PROPRIETARY" or with words of similar import, or if Employee knows or reasonably should know that the information was received by Company under an obligation of

confidentiality or restricted use. Confidential Information may be contained in or represented by memoranda, notebooks, journals, computer programs, documents, correspondence, notes, or any other written or electronic media.

B. Employee shall hold the Confidential Information in strict confidence and shall protect it with utmost care. Except as may be required in carrying out Employee's duties as an employee of Company, Employee shall not, during or after Employee's employment with Company, directly or indirectly, use for Employee's benefit or disclose to any third party any Confidential Information, or permit any person to examine or copy any Confidential Information, regardless of the manner in which Employee gained access to the Confidential Information. Employee shall read and comply with all present and future policies of Company governing the use, protection, and non-disclosure of Confidential Information.

C. Nothing in this Paragraph shall be interpreted to prevent disclosure or use of information that: (i) was in Employee's possession prior to the commencement of Employee's employment and not subject to any obligation of confidentiality; (ii) becomes a part of the public domain other than by a breach of this Agreement; (iii) is rightfully received by Employee from a third party not obligated to hold such information confidential; or (iv) is required by law to be disclosed, but only to the extent that such disclosure is legally required.

D. Upon Company's request and, in any event, promptly upon termination of Employee's employment, Employee shall return and deliver to Company all materials containing or representing Confidential Information in Employee's possession or control, and all written and electronic copies thereof, and Employee shall not retain (for Employee's own use or the use of any third party) any Company materials or copies thereof containing or representing Confidential Information.

E. Employee acknowledges that, in addition to Confidential Information, Employee may have access in the course of Employee's employment with Company to third party materials that are not necessarily confidential, but which may be protected by patent or copyright or which the third party otherwise provides to Company or others on a restricted basis. Employee acknowledges that making any unauthorized use of such materials or providing any such materials to unauthorized persons may cause Company to be in breach of its commitments to the third party and may subject Company to claims for damages. Accordingly, Employee agrees not to use, copy, distribute, or transmit any such third party materials received in the course of Employee's employment, except in carrying out Employee's duties as an employee of Company and as contemplated by any agreements between Company and the third party provider of such materials.

9. <u>Covenant Restricting Competition</u>. During the term of Employee's employment and for a period of three (3) years thereafter, Employee shall not, anywhere in the State of Utah, either directly or indirectly:

(a) engage in any activity competitive with Company, including without limitation the design, development, marketing, production, or sale of any product or service similar to or substitutable for any of Company's products or services; or

(b) own, operate, have any interest in, or be compensated by any entity or business that is engaged in any such competitive activity.

10. Covenant Restricting Solicitation. During the term of Employee's employment and for a period of three (3) years thereafter, Employee shall not, directly or indirectly:

   A. interfere with or solicit for Employee or for any other person or entity any of Company's customers or prospective customers to whom Company has provided goods or services, or who have expressed interest in Company's goods or services, during the term of Employee's employment; or

   B. employ or solicit for employment, or assist any other person or entity in employing or soliciting for employment, any employee or independent contractor of Company, or otherwise encourage any employee or independent contractor of Company to terminate their employment with or work for Company.

11. Computer and Technology Resource Usage Policy. Employee represents and warrants that Employee has read and understood the Company's Computer and Technology Resource Usage Policy (the "Policy") and that Employee agrees to abide by the terms of the Policy. Employee understands that violation of the Policy could result in employment by Company and Employee performance of this Agreement will not conflict with any obligation that Employee may have to any prior employer or any other third party; and that, if any confidential or protected information in Employee's possessio

11. Prior Obligations. Employee represents and warrants that Employee employment by Company and Employee performance of this Agreement will not conflict with any obligation that Employee may have to any prior employer or any other third party; and that, if any confidential or protected information in Employee's possession is owned by any third party and relates in any way to Company's products or services, that Employee shall not disclose the same to Company or embody the same in any Company product or service unless such third party owner has consented to Employee's disclosure of such information to Company or its embodiment in the Company's products or services.

12. Post-Employment Cooperation. During the term of Employee's employment and thereafter, Employee shall, upon Company's request and at Company's reasonable expense, cooperate with and assist Company in any dispute, controversy, or litigation in which Company may be involved, including but not limited to participation in court or arbitration proceedings, giving of testimony and signing of affidavits or other documents.

13. Remedies. Employee recognizes that Company will be irreparably harmed by any violation or breach of any covenant or obligation of Employee relating to Company's confidential or proprietary information, solicitation of Company's customers, accounts, or agents, contacting Company's employees following termination of Employee's employment, or engaging in activities that are directly or indirectly competitive with Company's business. Employee further recognizes that no remedy at law would be sufficient to protect the interests of Company in connection with such a violation or breach. Therefore, in addition to any other remedies that the Company may have hereunder or under the law, Company shall be entitled to an immediate injunction from any court having competent jurisdiction, restraining any such violation or breach hereof, or to a decree of specific performance, if applicable.

14. Acknowledgment. In executing this Agreement, Employee acknowledges that Employee does not rely on any inducements, promises or representations of Company, or its officers or directors, other than the terms and conditions specifically set forth in this Agreement. Employee further acknowledges that Employee has read and understands all of the terms of this Agreement; that Company's offer of employment constitutes fair and adequate consideration for Employee's obligations and covenants set

10. <u>Covenant Restricting Solicitation</u>. During the term of Employee's employment and for a period of three (3) years thereafter, Employee shall not, directly or indirectly:

   A. interfere with or solicit for Employee or for any other person or entity any of Company's customers or prospective customers to whom Company has provided goods or services, or who have expressed interest in Company's goods or services, during the term of Employee's employment; or

   B. employ or solicit for employment, or assist any other person or entity in employing or soliciting for employment, any employee or independent contractor of Company, or otherwise encourage any employee or independent contractor of Company to terminate their employment with or work for Company.

11. <u>Computer and Technology Resource Usage Policy</u>. Employee represents and warrants that Employee has read and understood the Company's Computer and Technology Resource Usage Policy (the "Policy") and that Employee agrees to abide by the terms of the Policy. Employee understands that violation of the Policy could result in employment by Company and Employee performance of this Agreement will not conflict with any obligation that Employee may have to any prior employer or any other third party; and that, if any confidential or protected information in Employee's possessio

11. <u>Prior Obligations</u>. Employee represents and warrants that Employee employment by Company and Employee performance of this Agreement will not conflict with any obligation that Employee may have to any prior employer or any other third party; and that, if any confidential or protected information in Employee's possession is owned by any third party and relates in any way to Company's products or services, that Employee shall not disclose the same to Company or embody the same in any Company product or service unless such third party owner has consented to Employee's disclosure of such information to Company or its embodiment in the Company's products or services.

12. <u>Post-Employment Cooperation</u>. During the term of Employee's employment and thereafter, Employee shall, upon Company's request and at Company's reasonable expense, cooperate with and assist Company in any dispute, controversy, or litigation in which Company may be involved, including but not limited to participation in court or arbitration proceedings, giving of testimony and signing of affidavits or other documents.

13. <u>Remedies</u>. Employee recognizes that Company will be irreparably harmed by any violation or breach of any covenant or obligation of Employee relating to Company's confidential or proprietary information, solicitation of Company's customers, accounts, or agents, contacting Company's employees following termination of Employee's employment, or engaging in activities that are directly or indirectly competitive with Company's business. Employee further recognizes that no remedy at law would be sufficient to protect the interests of Company in connection with such a violation or breach. Therefore, in addition to any other remedies that the Company may have hereunder or under the law, Company shall be entitled to an immediate injunction from any court having competent jurisdiction, restraining any such violation or breach hereof, or to a decree of specific performance, if applicable.

14. <u>Acknowledgment</u>. In executing this Agreement, Employee acknowledges that Employee does not rely on any inducements, promises or representations of Company, or its officers or directors, other than the terms and conditions specifically set forth in this Agreement. Employee further acknowledges that Employee has read and understands all of the terms of this Agreement; that Company's offer of employment constitutes fair and adequate consideration for Employee's obligations and covenants set

forth herein; that the limited confidentiality, non-competition and non-solicitation covenants are reasonable in time and geographical scope and will not create any economic or professional hardship for Employee; that during Employee employment Employee will render services to Company that are special and unique; that Employee has the means to support himself/herself and Employee's dependents other than by engaging in the business activities prohibited hereunder; that Employee has been advised to consult with independent counsel regarding this Agreement and has consulted with independent counsel to the extent Employee deems necessary; and that Employee has made such investigation of the facts pertaining to this Agreement and of all other matters pertaining to Company and Employee anticipated work as Employee deems necessary.

15. Mediation; Arbitration. All controversies or disputes arising out of or relating to this Agreement or its subject matter (specifically excluding injunctive relief) which the Parties are unable to resolve within thirty (30) days after written notice by one Party to the other of the existence of such controversy or dispute, shall be submitted by either or both Parties to non-binding mediation, to be conducted in accordance with the commercial mediation rules and procedures of the American Arbitration Association, which mediation shall take place in Provo, Utah. If the Parties are unable to resolve the matter by mediation, either Party may submit the same to binding arbitration to be conducted in accordance with the commercial arbitration rules and procedures of the American Arbitration Association, which arbitration shall take place in Provo, Utah. The decision by the arbitrator(s) shall be binding and conclusive upon the Parties, their successors and assigns, and they shall comply with such decision in good faith. The Parties also submit themselves to the jurisdiction of the state and federal courts within the State of Utah for the entry of judgment and enforcement thereof with respect to the decision of the arbitrator(s) hereunder. Judgment upon the award may also be entered in any state or federal court outside the State of Utah having competent jurisdiction. The fees and expenses of the arbitrator(s) shall be apportioned between the Parties by the arbitrator(s) in accordance with the findings and results of the arbitration. In the event that either Party hereto shall be found in default or breach of, or otherwise liable under, this Agreement by arbitration, said Party shall be liable to pay all attorney's fees, arbitration fees and costs, and all other related collection costs, fees and expenses, incurred by the other Party in enforcing said Party's rights hereunder. Both Parties covenant not to sue one another in any court in connection with any controversy, dispute or breach arising out of or relating to this Agreement (excluding claims for injunctive relief), and acknowledge and agree that the foregoing negotiation/ mediation/ arbitration procedures are their sole and exclusive options for resolving the same.

16. Attorney's Fees. In the event that any party hereto shall be found in default or breach of this Agreement, or in the event of a dispute between the parties in regards to the subject matter of this Agreement, the party found to be in breach or liable to the prevailing party shall pay to the prevailing party all reasonable attorney's fees, arbitration and court costs and other reasonably related collection costs and expenses incurred by the prevailing party in enforcing its rights hereunder.

17. Further Instruments. The parties hereto agree that they will execute any and all other documents or legal instruments, and take any other action, that may be necessary or reasonably required by any party to effectuate the purposes and provisions of this Agreement.

18. Governing Law and Jurisdiction. This Agreement will be governed by and construed under the laws of the State of Utah and the Parties hereto submit to the jurisdiction of an appropriate court in Utah County, Utah to rule on any disputes arising out of this Agreement and agree that venue in any other state be prohibited. The Parties agree that this choice of venue and choice of law paragraph is mandatory, and not discretionary.

19. Waiver. A waiver by any party of any term or condition of this Agreement, whether in writing or by course of conduct or otherwise, shall be valid only in the instance for which it is given, and shall not be deemed a continuing waiver of said provision, nor shall it be construed as a waiver of any other provision hereof.

20. Severability. In the event that any provision of this Agreement, or any operation contemplated hereunder, is found by arbitration or a court of competent jurisdiction to be inconsistent with or contrary to any applicable law, ordinance, or regulation, the latter shall be deemed to control and the Agreement shall be regarded as modified accordingly, and the remainder of this Agreement shall continue in full force and effect.

21. Notices. Without precluding any other sufficient form of notice, all notices, demands, or other communications under this Agreement shall be deemed given if delivered personally or sent by first class mail to the address of the party as set out in this Agreement or to anther address specified by the party.

22. Entire Agreement. This Agreement constitutes the entire agreement between the parties pertaining to its subject matter, and it supersedes any and all written or oral agreements previously existing between the parties with respect to such subject matter. Employee acknowledges that he or she is not relying on any inducements, promises, or representations of Company or any officer, agent, or employee of Company in connection with Employee's employment, except for the commitments and promises of Company set out in this Agreement.

23. Amendment. No amendment of this Agreement shall be binding unless executed in writing by both parties.

24. Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their heirs, personal representatives, successors and permitted assigns.

IN WITNESS OF THE FOREGOING, the parties have signed this Agreement on the dates indicated below, but deemed effective by them as of the date first above written.

EMPLOYEE:

Name: Brooks C Houghton  Date 1 Sep 17

BANASKY INSURANCE, INC., a Utah corporation ("COMPANY"):

By: _____

Name: Ryan J Banasky  Date 1 Sep 17
Title: President