**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ALERA GROUP, INC.,** | |
| **Plaintiff,** | |
| **v.** | |
| **BROOKS HOUGHTON and JORDAN HOUGHTON, Individuals,** | |
| **Defendants.** | **Case No.  23 C 1109** |
| | **Judge Harry D. Leinenweber** |
| **BROOKS HOUGHTON, JORDAN HOUGHTON, and STRATEGIC INSURANCE, LLC,** | |
| **Counter-Plaintiffs,** | |
| **v.** | |
| **ALERA GROUP, INC., BANASKY INSURANCE, AN ALERA GROUP COMPANY; RHINO CAPITAL, INC. f/k/a BANASKY INSURANCE, INC.; RYAN BANASKY; and SCOTT LIFFERTH,** | |
| **Counter-Defendants.** | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On February 22, 2023, Plaintiff Alera Group, Inc. ("Alera") brought a two-count breach of contract Complaint against Defendants Brooks Houghton ("Brooks") and his brother, Jordan Houghton ("Jordan") (Dkt. No. 1; Complaint ("Compl.")). On July 25,

2023, Defendants Brooks and Jordan, as well as third-party Strategic Insurance, LLC ("Strategic"), (collectively, "Counter-Plaintiffs" or "Brooks and Jordan") brought counterclaims and third-party claims against Alera, Banasky Insurance, an Alera Company ("New Banasky"), Banasky Insurance, Inc. ("Old-Banasky"), and individuals Ryan Banasky, and Scott Lifferth (collectively, "Counter-Defendants") (Dkt. No. 22; Counter-Complaint ("Countercl.")).

On August 21, 2023, the Counter-Defendants moved to dismiss Brooks's and Jordan's Counter-Complaint for lack of subject-matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), respectively (Dkt. Nos. 28, 30; Motions to Dismiss).

On August 23, 2023, Brooks and Jordan moved to transfer the entirety of the case to the District of Utah (Dkt. Nos. 49, 50; Motion to Transfer).

For the reasons stated herein, Brooks's and Jordan's Motion to Transfer (Dkt. No. 49) is DENIED. The Court GRANTS IN PART and DENIES IN PART Counter-Defendants' Motions to Dismiss the Counter-Complaint (Dkt. Nos. 49, 50).

## I.    BACKGROUND

The following facts are taken from the Complaint, the Counter-Complaint, and the parties' briefings.

### A.    Old Banasky's Purchase of Strategic

Brooks lives and works in Utah, and until August 2017, he operated his own insurance business under the name Strategic Insurance Agency, LLC ("Strategic") with

his brother, Jordan, who worked there as an insurance agent. (Compl. ¶ 3). In August 2017, Brooks sold the assets of Strategic to Banasky Insurance, Inc. ("Old Banasky"), a Utah-based insurance company. The next month, Brooks and Jordan signed an employment agreement with Old Banasky. The asset purchase was funded by a promissory note and personal guaranty indicating that in exchange for Strategic's assets, Old Banasky promised to pay Brooks $2,500,000 and an additional 5% simple interest accruing annually. (Countercl. ¶ 27). Ryan Banasky served as the president of Old Banasky and executed the Employment Agreement for Brooks' role as Senior Vice President of Old Banasky and for Jordan's role as an insurance agent for Old Banasky. (*Id.* ¶¶ 25, 29).

From this transaction, Brooks and Jordan allege in their Counter-Complaint that Ryan Banasky and Scott Lifferth ("Lifferth"), who also worked at Old Banasky as its Chief Strategy Officer, never complied with their financial obligations in relation to the sale of Strategic and made fraudulent statements to Brooks and Jordan to induce their assent to the sale. Brooks and Jordan also allege that Scott Lifferth and Ryan Banasky improperly withheld some of Brooks' and Jordan's well-earned commissions from their employment at Old Banasky during the years 2017 and 2020, and they assert wage payment claims against Old Banasky, Ryan Banasky, and Scott Lifferth under Utah's wage payment statute.

## B. Alera's Purchase of Old Banasky

Three years after the sale of Strategic to Old Banasky, in August 2020, Alera, a large Illinois-based insurance agency, acquired Old Banasky in an asset purchase

- 3 -

transaction. To consummate the acquisition of Old Banasky by Alera, Old Banasky needed to retain the clients acquired by the sale of Strategic, and Strategic's top agents, including the Brooks and Jordan. A new corporate entity named "Banasky, an Alera Insurance Agency, LLC" ("New Banasky") was formed. New Banasky is a Delaware limited liability corporation. After the sale of Old Banasky, Brooks and Jordan became insurance agents at New Banasky. Brooks and Jordan each executed a Producer Agreement and a Restrictive Covenant Agreement as a condition of their employment with New Banasky, though the propriety of the execution of the agreements is disputed. (*See* Dkt. No. 1, Exhibits ("Exs.") A-C). Specifically, as a condition of these agreements, Brooks and Jordan promised that they would not compete with Alera or solicit customers or divert customers away from Alera during their employment. (Compl. ¶ 14). Alera is a party to Brooks's and Jordan's Producer and Restrictive Covenant Agreements.

Brooks alleges in the Counter-Complaint that in connection with the sale of Old Banasky to Alera, Scott Lifferth and Ryan Banasky made false promises that the sale would not impact money still owed to Brooks for the sale of Strategic. Brooks and Jordan also allege that Scott Lifferth and Ryan Banasky improperly withheld Brooks's and Jordan's well-earned commissions from their employment at New Banasky during the years 2020-2021 and assert wage claims against New Banasky, Ryan Banasky, and Scott Lifferth under Utah's wage payment statute.

### C.    End of New Banasky Employment

Brooks terminated his employment with New Banasky in May 2021, and Jordan alleges he was involuntarily terminated from New Banasky in December 2022, in

- 4 -

retaliation for demanding payment of money he had earned as an insurance agent that was improperly withheld. Brooks and Jordan allege in their Counter-Complaint that "on or around 2022," Counter-Defendants engaged in conduct that tortiously interfered with client relationships that Brooks and Jordan developed after leaving New Banasky. (Countercl. ¶ 146). This conduct allegedly included making false statements to their clients about Brooks and Jordan committing insurance malpractice.

Relying on a forum selection provision contained in the now disputed Producer Agreements and Restrictive Covenant Agreements, Alera brings breach of contract claims against Brooks and Jordan in this action in Illinois. Alera alleges Brooks and Jordan violated the Producer Agreements and Restrictive Covenants by soliciting and diverting away Alera clients after their employment with New Banasky ended, despite having signed the agreements with client solicitation restrictions. Alera seeks injunctive relief and damages incurred because of Brooks's and Jordan's client diversion.

## II.  **LEGAL STANDARD**

The Court must consider Brooks's and Jordan's Motion to Transfer the entire matter under 28 U.S.C. § 1404(a) from this Court to the District of Utah before ruling on Counter-Defendants' Motions to Dismiss Brooks's and Jordan's Counter-Complaint. In opposition to the transfer, Counter-Defendants argue that only Alera's breach of contract claims should remain in Illinois (Dkt. No. 55, Opposition to Motion to Transfer).

28 U.S.C. § 1404 allows a district court to transfer a case for the convenience of the parties. 28 U.S.C. § 1404(a). Generally, the analysis under this provision includes two parts. "First, an adequate alternative forum must be available to hear the case." *Ayyash*

- 5 -

*v. Horizon Freight Sys., Inc.*, 2018 WL 5994755, at *2 (N.D. Ill. Nov. 15, 2018). If this first part is met, the Court then weighs the private interests of the litigants with the public interests of the forum to determine whether a transfer would serve the convenience of the parties and witnesses and otherwise promote the interest of justice. *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). This analysis changes when the agreement contains a valid forum selection clause, however. As explained in *Atl. Marine Constr. Co. v. U.S. Dist. Ct of the W. Dist. Of Tex.*, a forum selection clause "may be enforced through a motion to transfer under § 1404(a)." 571 U.S. 49, 59 (2013). If a valid forum selection clause governs the dispute, the clause "[should be] given controlling weight in all but the most exceptional cases." *Id.* at 60. Plaintiff's choice of forum "merits no weight," and the court should not consider arguments about the parties' private interests. *Id.* at 63–64. "[T]he plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted" and "forum-selection clauses should control except in unusual cases." *Id.* at 63. Consequently, with a valid and applicable forum selection clause, "a district court may consider arguments about public-interest factors only." *Id.*

The Motion to Transfer before this Court requires this Court to determine how district courts should apply *Atl. Marine* where Brooks and Jordan seek a transfer to one district of the entire matter after bringing third-party claims and counterclaims against new parties not bound by the forum selection clause which governs the claims in the original complaint.

### III.   **DISCUSSION**

### A.     **Motion to Transfer**

### 1.     *Forum Selection Clause*

As an initial matter, the Court must determine whether the forum-selection clauses contained in the Restrictive Covenants and Producer Agreements between Brooks and Jordan on the one hand, and New Banasky and Alera on the other, are valid and enforceable. Brooks and Jordan contest the enforceability of the forum selection clauses on two grounds. First, they argue that the forum selection clauses are not enforceable because the Producer Agreement and Restrictive Covenants were adopted under duress and threat of termination and without opportunity for fair review or consult with counsel. Second, they argue that the language of the forum-selection clause does not require that litigation be maintained or continued in Illinois, but only that litigation "commence" in Illinois. The Court will address each argument in turn.

The Seventh Circuit has confirmed that a forum-selection clause is invalid from fraud only if "*the clause itself* was procured by fraud." *Muzumdar v. Wellness Intern. Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (emphasis added). Brooks and Jordan concede that merely alleging the agreements were induced fraudulently is insufficient to find the forum selection clauses specifically are unenforceable. (Dkt. No. 50 at 3. n. 2.) But they rely on an out-of-district case decided before *Atl. Marine* that grants a motion to transfer despite a forum selection clause because of the fraudulent circumstances in which the clause was procured, *GPS Indus., LLC v. Lewis*, 2010 WL 11629145, at *5 (M.D. Fla. Aug. 30, 2010). This case is inapt for two reasons. First, the plaintiff in *GPS Indus.*

alleged the forum clause itself was procured fraudulently, which Brooks and Jordan do not do here. *Id.* at *3. Second, the court in *GPS Indus.* does not give "controlling weight" to the forum selection clause whatsoever and analyzes the private interest factors – factors which *Atl. Marine* explicitly instructed trial courts to discount. *Atl. Marine*, 571 U.S. at 51 ("forum selection clause should be given controlling weight in all but the most exceptional cases") (cleaned up).

Next, Brooks and Jordan argue that the forum selection clauses in both the Producer Agreement and Restrictive Covenants are not mandatory because the language requires only that litigation "commence" in Illinois, allowing for transfer after the case is filed. The clauses are the same, with the exception that the clause in the Producer Agreement does not contain the underlined language below. The forum selection clauses state:

> The validity, interpretation and performance of this Agreement shall be governed by and construed in accordance with the internal laws of the State of Illinois, without giving effect to conflict of law principles. Both parties agree that any action, demand, claim or counterclaim relating to the terms and provisions of this Agreement or to its breach, shall be commenced <u>only and exclusively</u> in the State of Illinois in a court of competent jurisdiction, and Associate hereby consents to personal jurisdiction and venue in such court(s).

(Producer Agreement, Dkt. No. 1-2, Exhibit ("Ex. C") at 4; Restrictive Covenant, Dkt. No. 1-1, Ex. B at 13).

But "federal contract law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *IAC/InterActiveCorp. v. Roston*, 44 F.4th 635,

643 (7th Cir. 2022) (citing *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)). The Court interprets the language "shall be commenced only and exclusively" to be mandatory language requiring the venue be Illinois for any claim relating to the Restrictive Covenant and/or Producer Agreement. The Court will not interpret the "commence" language to convert the otherwise mandatory clause into a permissive one. To interpret it otherwise would defeat the purpose of having a forum selection clause, since the Court sees little purpose in specifying only where litigation is to be filed if the parties may then transfer immediately. And Brooks and Jordan do not seem to dispute that the scope of the forum selection clause, which covers "any action, demand, claim or counterclaim" relating to the Agreements, applies to Alera's claims alleging that Brooks and Jordan violated the terms of the Agreements.

As a result, the forum selection clauses contained in the Producer Agreements and in the Restrictive Covenants are valid and enforceable. The Court will undergo the remainder of the *Atl. Marine* analysis to determine whether public interest factors support a transfer of all or part of this matter under 28 U.S.C. § 1404(a) to the District of Utah.

### 2. *Motion to Transfer Analysis*

With a valid and applicable forum selection clause, "a district court may consider arguments about public-interest factors only" in assessing a Motion to Transfer under § 1404(a). *Atl. Marine*, 571 U.S. at 64. However, "forum-selection clauses should control except in unusual cases," and public interests will "rarely defeat" the parties' private interests in enforcing a forum-selection provision. *Id*. Relevant public interest factors include "the administrative difficulties flowing from court congestion; the local interest in

having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. at 62, n. 6.

Brooks and Jordan fail to present this as an "unusual" case where the public interest overrides enforcement of the valid forum selection clause. First, they argue that the District of Utah brings cases to trial more quickly than does the Northern District of Illinois, comparing the average time in Utah of 54.4 months to 58.2 months in Illinois. But Brooks and Jordan cite no case where a four-month difference was material to a motion to transfer analysis, let alone a case supporting that these four months could constitute the sort of "unusual" consideration that outweighs a valid and enforceable forum-selection clause under *Atl. Marine*.

Second, Brooks and Jordan argue that it is possible that Utah law governs the restrictive covenants here, which favors the Court transferring the case to Utah where courts are more familiar with applying Utah law than Illinois courts. Again, they cite no case where the possibility of applying out-of-state law was so "unusual" as to justify overriding a valid and enforceable forum selection clause. In fact, *Atl. Marine* acknowledged that "federal judges routinely apply the law of a State other than the State in which they sit." 571 U.S. at 67. Plus, this is a contract dispute – the Court is confident that it can apply another state's contract law without unusually burdening any public interest.

Third, Brooks and Jordan rely on the local interests of Utah as a public factor that "overwhelmingly" supports transferring the entire matter to Utah. (Dkt. No. 50 at 6). They argue that Utah is the "overwhelming center of gravity" in the lawsuit, since the

agreements at issue were executed in Utah, call for performance in Utah, and all the parties except for Alera are Utah residents. (*Id.*) Further, Alera seeks injunctive relief that would occur in Utah and nearly all the alleged tortious conduct and affirmative breaches by Counter-Defendants occurred in Utah. Brooks and Jordan also rely on *Rosati's Franchising, Inc. v. Fire It Up, LLC*, 2015 WL 3961703 (N.D. Ill. June 29, 2015). In *Rosati's*, the court found that transfer to the District of Arizona was proper under § 1404(a). The case involved plaintiff Rosati's (an Illinois corporation) suit against its former franchisee, Fire It Up, LLC ("Fire It Up") in Illinois. Despite an enforceable Illinois forum selection clause, Fire It Up moved to transfer the matter to the District of Arizona, arguing the presumption of the forum selection clause was overcome by public-interest factors. The court found that "Arizona's interest in the controversy tip[ped] the scale in favor of transfer" because of its interest in ensuring residents were protected from trademark infringement and unfair competition, and because the enforcement of permanent injunctive relief would take place in Arizona. 2015 WL 3961703, at *8. Brooks and Jordan argue that Utah, like Arizona in *Rosati's,* has a greater interest in "regulating the conduct of its residents, applying restrictive covenants between Utah employees and Utah employers, and enforcing its own laws" than does Illinois in resolving a dispute "between a third-party beneficiary of a Utah contract [Alera] and two Utah residents." (Dkt. No. 50 at 7). Brooks and Jordan argue that because of Utah's interest, the entire matter – Complaint and Counter-Complaint – should be transferred out of Illinois.

The Court declines to follow *Rosati's* on this. This is not the kind of "unusual" scenario where the public interest trumps a valid forum selection clause. No doubt, Utah

has an interest in a dispute where several parties are Utah residents and the contract concerns Utah business. But Illinois' interest in vindicating the rights of one of its largest employers cannot be said to be so unusually negligible as to constitute an extraordinary circumstance justifying the transfer of every claim to Utah and overriding a valid forum selection clause. *See Ayyash*, 2018 WL 5994755, at *7 (public interest factor deemed neutral in case with Ohio forum selection clause when plaintiffs were residents of Illinois but defendants were residents of Ohio such that both states had interest in dispute); *Warwick v. Schneider Nat., Inc.*, 2020 WL 5891407, at *7–8 (N.D. Ill. Oct. 5, 2020) (similar); *see also, Elevance Health, Inc. v. Mohan*, 2023 WL 6049674, at *6 (S.D. Ind. Sept. 15, 2023) (public interest factors deemed neutral in case with Indiana forum selection clause in part because "Indiana has a strong interest in vindicating the rights of one of its largest employers" even though employee was California-based).

Further, there is a public policy consideration that counters against transferring the whole matter. Brooks and Jordan added new parties and claims not subject to the forum selection clause in a Counter-Complaint and would have this Court transfer the entire matter as a result. In *Nulogy Corp. v. Menasha Packaging Co., LLC* – a case the Court will address in further detail below – the Seventh Circuit cautioned that "[plaintiff] should not be allowed to circumvent its freely agreed upon forum selection clause by naming [a party not subject to forum selection clause]." 76 F.4th 675, 682 (7th Cir. 2023). Just as the Seventh Circuit held in *Nulogy* that the plaintiff should not be permitted to avoid a forum selection clause by naming a defendant in its complaint not subject to the forum selection clause, Brooks and Jordan should not be allowed to circumvent their

forum selection clause by naming counter-defendants and counterclaims not subject to the forum selection clause in a Counter-Complaint. *See also IAC/InterActiveCorp*, 44 F.4th at 645 (describing the Seventh Circuit's "approach to forum selection" as "disfavor[ing] gamesmanship" and cautioning against "allowing plaintiffs to defeat forum selection clauses by choosing certain provisions to sue under or legal theories to press.") The Court aims to avoid creating incentives to evade forum selection clauses, particularly when the Supreme Court unequivocally emphasized that a forum-selection clause plays a very significant role in furthering "vital interests of the justice system." *Atl. Marine*, 571 U.S. at 63 (internal citation omitted).

Thus, the public interest factors do not warrant denial of a transfer of the entire matter under 28 U.S.C. § 1404(a) under an *Atl. Marine* analysis.

### 3. Sever and Transfer Analysis

The transfer inquiry does not always end there in a case like this, where not all the parties and claims involved are governed by the forum selection clause. It may be the case that under *Atl. Marine*, severance, and transfer of the claims not subject to the forum selection clause are appropriate.

No party disputes that the claims governed by the forum selection clause are limited to Alera's two breach of contract claims, Counter-Complaint Counts I (declaratory judgment against Alera), Count II (Brooks' Utah wage claim against Alera and New Banasky), Count III (Jordan's Utah wage claim against Alera and New Banasky), and Count IV (Jordan's retaliatory termination claim against New Banasky and Alera). But Brooks and Jordan argue that Old Banasky, Scott Lifferth, and Ryan Banasky should be

bound by the forum selection clause for personal jurisdiction purposes. Alera urges the Court to take the "less burdensome course" and sever and transfer the claims *not* subject to the forum selection clause to the District of Utah, rather than assess subject matter jurisdiction, personal jurisdiction, and venue questions for each. (Dkt. No. 55 at 11). Brooks and Jordan object to the severance of some of the claims and argue for an all or nothing approach – either all the claims or none of the claims should be transferred. Because relevant case law suggests jurisdictional concerns actually inform the severance analysis, the Court will address jurisdictional concerns before severance.

### a. Jurisdiction

In cases where only some claims are governed by the forum selection clause, some courts find severance and piecemeal litigation to be the best course of action in honoring a valid forum selection clause. This was the case in the Seventh Circuit's recent approach in *Nulogy Corp. v. Menasha Packaging Co., LLC*, 76 F.4th 675, 682 (7th Cir. 2023). There, plaintiff Nulogy Corporation brought breach of contract claims against Menasha Packaging Company, LLC ("Menasha") and Deloitte Consulting, LLP ("Deloitte") in the United States. Menasha was subject to a forum selection clause in Canada, and Deloitte was not. However, Deloitte argued that the Canadian forum did not have jurisdiction over Deloitte. At issue was Deloitte's Motion to Dismiss on 12(b)(6) grounds and Menasha's Motion to Dismiss on *forum non conveniens* grounds.

The Seventh Circuit affirmed the district court's dismissal of the claims in the United States against Menasha because of the valid Canadian forum selection clause. The court also held that the suit could continue against Deloitte in the U.S. despite the

- 14 -

resulting piecemeal litigation between claims against Menasha in Canada and against Deloitte in the United States. The Court noted that "piecemeal litigation weigh[ed] in favor of dismissing the claims against Deloitte [in the U.S.], but Deloitte's insistence that Canadian courts lack[ed] jurisdiction counsel[ed] against dismissing it from the case in the United States." *Id.* The court ultimately opted for piecemeal litigation, "recogniz[ing] that [ ] dismissing the claims against Menasha in favor of litigating those claims in Canada [ ] would require closely related trade secrets claims to proceed simultaneously in Canada (against Menasha) and the United States (against Deloitte)." *Id.* (cleaned up). In sum, the Court honored a forum selection clause, and because of jurisdictional concerns, opted for piecemeal litigation. Thus, jurisdictional concerns can inform the severance analysis under § 1404(a). *See also In re Howmedica Osteonics Corp.*, 867 F.3d 390, 404 (3d Cir. 2017) ("In some cases, severance clearly will be warranted to preserve federal diversity jurisdiction; to cure personal jurisdiction, venue, or joinder defects").

Here, severance of any claim not subject to the forum selection clause does not make sense because the jurisdictional concerns the claims face in this Court would not be cured by transfer to the District of Utah. This is unlike *Nulogy,* where jurisdictional concerns favored severance. In ruling on the jurisdictional arguments raised in Counter-Defendants' Motions to Dismiss, the Court will take the time to rule on all of the arguments in Counter-Defendants' Motions to Dismiss to maximize efficiency.

### B.    Motion to Dismiss

Alera and New Banasky filed a Motion to Dismiss Brooks's and Jordans' Counter-Complaint, and Old Banasky, Ryan Banasky, and Scott Lifferth filed a separate Motion to

Dismiss, though many of their arguments overlap with Alera's motion. The arguments raised in the motions to dismiss include failure to state a claim under Rule 12(b)(6), lack of personal jurisdiction under Rule 12(b)(2), lack of supplemental jurisdiction under Rule 12(b)(1), and lack of venue under Rule 12(b)(3). Because the Court finds the personal jurisdiction issue dispositive for the claims against the Third Parties Old Banasky, Ryan Banasky, and Scott Lifferth, the Court will address this first. Alera (again with New Banasky) concede to personal jurisdiction in Illinois, as signatories to the forum-selection clause.

### 1.    Third Party Claims

Old Banasky, Ryan Banasky, and Scott Lifferth are each Utah residents and move to dismiss Brooks's and Jordan's Third-Party Claims against them for lack of personal jurisdiction.  Brooks and Jordan concede that these third parties did not sign the relevant forum-selection clauses. However, Brooks and Jordan argue that Old Banasky, Ryan Banasky, and Scott Lifferth should nonetheless be bound by the forum-selection clauses for purposes of personal jurisdiction under the non-signatory theory or, in the alternative, under the conspiracy theory. Neither theory suffices to establish personal jurisdiction.

Under the non-signatory theory, Brooks and Jordan contend that the Seventh Circuit has held that non-signatories may nevertheless be bound by a forum-selection clause if the party is affiliated or "closely related" to the dispute such that it becomes "foreseeable" that it will be bound. (Dkt. No. 48, Opposition to Motion to Dismiss, at 16) (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993)). However, Brooks and Jordan fail to cite a single case where the non-signatory principle was applied for

- 16 -

purposes of finding personal jurisdiction as opposed to venue. The question is whether the non-signatory parties can be deemed to have waived objection to personal jurisdiction based on a forum-selection clause in a contract to which they were not parties. "[T]he Seventh Circuit has applied the doctrine to bind non-signatories to a forum selection clause only in the venue context." *Shanghai Daisy, LLC v. PositivEnergy, Inc.*, 2020 WL 4365883, at *5 (N.D. Ill. Jul. 30, 2020). Courts in this district have deemed the use of the non-signatory principle for personal jurisdiction to be "beyond the scope of what was contemplated by the Seventh Circuit" in *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012), and that to hold otherwise would offend due process. *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 925–26 (N.D. Ill. Aug. 28, 2017) (noting "serious concerns" over whether it would be reasonable and just to apply the "close relationship test" to find implied consent to personal jurisdiction). *See also Monco v. Zoltek Corp.*, 2019 WL 952138, at *17 (N.D. Ill. Feb. 27, 2019) (declining to exercise personal jurisdiction through non-signatory principle over officer in his personal capacity who signed forum-selection clause only in his corporate representative capacity); *Playboy Enterprises Intern., Inc. v. Smartitan (Singapore) PTE Ltd.*, 804 F. Supp. 2d 730, 737 (N.D. Ill. Apr. 7, 2011) (to bind non-signatories to forum-selection clause would be to "impermissibly allow a plaintiff to establish personal jurisdiction over directors and shareholders of a corporation simply by alleging that they were closely related to the dispute arising from the agreement.")

Nor does the conspiracy theory supply this Court with personal jurisdiction over Third Parties Old Banasky, Ryan Banasky, and Scott Lifferth. Brooks and Jordan argue

that "a district court may exercise jurisdiction over all coconspirators, both resident and non-resident, based on their involvement in a conspiracy which occurred within the forum." (Dkt. No. 48 at 20) (citing *Kohler Co. v. Kohler Int'l, Ltd.*, 196 F. Supp. 2d 690, 696 (N.D. Ill. 2022). Brooks and Jordan concede, though, that the theory permits the exercise of personal jurisdiction over a nonresident defendant only if that defendant coconspirator already has minimum contacts with the forum state. *Khan v. Gramercy Advisors, LLC*, 61 N.E. 3d 107, 144–45 (Ill. App. 2016). To exercise personal jurisdiction over nonresident coconspirator A based solely on the minimum contacts of coconspirator B would "dispense with the constitutional requirement that [nonresident] purposefully make minimum contacts with [forum state] before that state exercised personal jurisdiction over him." *Id.* at 145. So, the question boils down to whether Third Parties have minimum contacts with Illinois, and the Court finds they do not.

The specific jurisdiction analysis "may be condensed to three essential requirements:

> "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the firm state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice."

*Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (emphasis added, citations omitted).

There are two forms of personal jurisdiction — general and specific. "If the defendant's contacts are so extensive that it is subject to general personal jurisdiction, then it can be sued in the forum state for any cause of action arising in any place. More

limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). "In either case, the ultimate constitutional standard is whether the defendant had 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 425 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum-contacts analysis varies depending on the type of claim alleged. *See Felland*, 682 F.3d at 674. For torts, "the inquiry focuses on whether the conduct underlying the claim[ ] was purposely directed at the forum state." *Id.* (internal citation omitted). A court that lacks personal jurisdiction over a defendant must dismiss the case as to that party. *See* FED. R. CIV. P. 12(b)(2). If a defendant moves to dismiss pursuant to Rule 12(b)(2), it places the burden on the plaintiff to demonstrate that the court has personal jurisdiction over the defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

The record here does not suggest Old Banasky, Ryan Banasky, or Scott Lifferth "deliberately" engaged in "significant activities" within Illinois or took conduct purposefully aimed at Illinois. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). The Court will proceed through each Third Party claim individually.

### a. Counts II and III – Utah Wage Claims
### (Old Banasky, Ryan Banasky, Scott Lifferth)

For the Utah Wage Claims in Counts II and III, Brooks and Jordan allege that "events related to the nonpayment of the Houghtons took place in Illinois." (Countercl. ¶ 22). But Brooks and Jordan cannot rely on conclusory allegations unsupported by factual assertions to establish personal jurisdiction. *See Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289, at *2 (N.D. Ill. May 21, 2018) ("conclusory allegations" such as the fact that defendant "transact[ed] significant business in this District" failed to establish personal jurisdiction). They fail to allege any conduct taken by Ryan Banasky or Scott Lifferth – Utah residents working in Utah with obligations to pay Utah employees. This claim is dismissed for lack of personal jurisdiction as to the Third Parties under Rule 12(b)(2). This claim is dismissed with prejudice.

### b. Count IV – Retaliatory Termination
### (Ryan Banasky, Scott Lifferth)

For the Retaliatory Termination Claim in Count IV against Ryan Banasky and Scott Lifferth, Jordan alleges that Ryan Banasky sent Jordan a letter terminating him from his employment both at New Banasky and Alera, cc'ing Alera's General Counsel. (Countercl. ¶ 123). There is no allegation that the letter was written in Illinois, and presumably it was written by Ryan Banasky, a Utah resident, in Utah, as the termination was of a Utah employee from a Utah company. Nor is there any allegation that the letter was received by Jordan, a Utah resident, in Illinois. Nor is there any allegation of Scott Lifferth's conduct aimed at Illinois regarding the termination. The Court finds this claim fails to establish the necessary minimum contacts and must be dismissed under 12(b)(2). And, regardless

of jurisdictional concerns, the claim must be dismissed against all Defendants under Rule 12(b)(6), as detailed in the next section. This claim is dismissed with prejudice as against Ryan Banasky and Scott Lifferth.

### c. Count V – Fraud
(Old Banasky, Ryan Banasky, Scott Lifferth)

For the Fraud Claim in Count V, Brooks fails to allege that Old Banasky, Ryan Banasky, or Scott Lifferth's conduct was aimed at Illinois. Instead, Brooks alleges that Old Banasky promised to pay Brooks over time for the sale of Strategic, and that on behalf of Old Banasky, Ryan Banasky and Scott Lifferth made willful misrepresentations to avoid complying with their financial obligations, causing Brooks and Strategic financial injury. Among the alleged representations includes falsely stating that the sale of Old Banasky to Alera would not impact payment for Strategic. (Countercl. ¶ 132). Each party involved was Utah-based and the sale at issue was of a Utah entity (Strategic) to another Utah entity (Old Banasky). And representations about the impact the sale of a Utah entity (Old Banasky) to an Illinois entity (Alera) would have on financial obligations concerning the sale of a Utah entity (Strategic) to another Utah entity (Old Banasky) do not suffice as conduct "aimed" at Illinois; it is at best *about* Illinois.

But even if there was personal jurisdiction, Rule 12(b)(1) demands that the Court dismiss this claim for lack of subject matter jurisdiction. First, there is no original jurisdiction because the claims are based in state law. The Court also cannot exercise diversity jurisdiction because all parties are residents of Utah. And supplemental jurisdiction extends only to mandatory, not permissive counterclaims. *Oak Park Tr. &*

*Savs. Bank v. Therkildsen*, 209 F.3d 648, 651 (7th Cir. 2000) (permissive counterclaims are outside supplemental jurisdiction) (accord *Drake v. Thornton Township High School Distr. No. 205*, 2019 WL 13253466, at *2 (N.D. Ill. Jul. 25, 2019). Mandatory counterclaims are "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* 28 U.S.C. § 1367(a). Here, representations made by Ryan Banasky and Scott Lifferth to Brooks relating to the sale of Strategic to Old Banasky do not arise from the same case or controversy as Brooks's and Jordan's non-compete and non-solicitation obligations arising from contracts relating to their employment at New Banasky and Alera. The Court will not extend supplemental jurisdiction to this permissive counterclaim, and it is dismissed with prejudice as against Old Banasky, Ryan Banasky, and Scott Lifferth.

### d. Count VI – Promissory Estoppel
### (Old Banasky, Ryan Banasky, Scott Lifferth)

Brooks and Strategic allege that for the sale of Strategic, Old Banasky promised to pay Brooks, on behalf of Strategic, $2,500,000 — to be paid monthly over time not to exceed 180 months — plus 5% interest on unpaid sums. They also allege that Scott Lifferth and Ryan Banasky promised Brooks that the sale of Old Banasky to Alera would not impact Old Banasky's payment to Brooks for the sale of Strategic, that Brooks relied on both representations, and that the Third Parties are estopped from deviating from their promises.

Brooks and Strategic fail to establish sufficient minimum contacts between the Third Parties and Illinois for this claim as well. Brooks alleges at most that "Ryan Banasky and Scott Lifferth on behalf of Strategic Insurance, conducted business in Illinois in the process of selling to Alera." (Countercl. ¶ 33). But this alleges nothing about where the misrepresentations were made, where the failure to pay took place, or that injuries were felt in Illinois. *See Pena v. Gray Line Corp.*, 2018 WL 2388411, at *3 (N.D. Ill. May 25, 2018) (statement that defendants conduct business or own property in state insufficient to show personal jurisdiction at motion to dismiss stage); *see also Sanderson v. Spectrum Labs, Inc.*, 227 F. Supp. 2d 1001, 1007 (N.D. Ind. Jan. 12, 2000) ("mere unsupported allegation that the defendant 'transacts business' in an area is clearly frivolous" at motion to dismiss stage) (quoting *Mass. School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d. Cir. 1997).

Regardless of personal jurisdiction, the Court would dismiss Count VI as against Old Banasky, Ryan Banasky, and Scott Lifferth under 12(b)(1) for lack of subject matter jurisdiction for the same reasons stated above for the Fraud claim in Count V.

### e. Count VII – Tortious Interference
### (Old Banasky, Ryan Banasky, Scott Lifferth)

Count VII alleges that Old Banasky, Ryan Banasky, and Scott Lifferth tortiously interfered with Brooks's and Jordan's client relationships after they left employment at New Banasky by, for example, "falsely stat[ing] to clients of Brooks [ ] that Brooks did not have a valid insurance license and could no longer offer coverage for clients." (Countercl. ¶ 147). However, the Counter-Complaint says nothing about the clients being

Illinois clients, or injury that was felt in Illinois, or interfering action taken in Illinois by either Ryan Banasky or Scott Lifferth. In fact, the Counter-Complaint alleges no action taken by Scott Lifferth or on behalf of Old Banasky at all. The Court dismisses the claim against Old Banasky, Ryan Banasky, and Scott Lifferth under 12(b)(2) for lack of personal jurisdiction.

### f. Count VIII – Conspiracy
### (Old Banasky, Ryan Banasky, Scott Lifferth)

Finally, without sufficient underlying allegations of conduct aimed at Illinois, the Conspiracy claim in Count VIII cannot stand against Old Banasky, Ryan Banasky, or Scott Lifferth for reasons stated above.

Accordingly, the District of Illinois cannot retain jurisdiction over any of Counter-Plaintiffs' claims against Old Banasky, Ryan Banasky, or Scott Lifferth. However, if this Court were to sever and transfer these claims to the District of Utah under § 1404(a), the claims would have no subject matter jurisdiction in the new forum: all the parties are Utah residents, all claims are state law claims, and federal jurisdiction would be wanting. And, because § 1404 relates only to transfer from one federal court to another federal court, the Court cannot transfer the claims to state court. Hence, the Court dismisses all claims against these three parties pursuant to Rule 12(b)(2).

### 2. Counterclaims

The Court will assess the arguments brought in Counter-Defendants' Motions to Dismiss Brooks's and Jordan's remaining counterclaims against Alera and New Banasky.

As a reminder, these claims are subject to the forum selection clause and the Court will not subject them to a severance analysis under *Atl. Marine* for purposes of § 1404(a).

### a.   Count I – Declaratory Judgment
### (Alera)

Count I must be dismissed because Declaratory Judgment is not a separate cause of action. *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 708 (N.D. Ill. 2016) (collecting cases). "It is well established that the Declaratory Judgment Act does not create an independent cause of action. It provides only an additional form of relief." *Morris v. Mfrs. Life Ins. Co.*, 1997 WL 534156, at *10 (S.D. Ind. Aug. 6, 1997); *see also Keesler v. Electrolux Home Prods., Inc.*, 2016 WL 3940114, at *3 (N.D. Ill. Jul. 21, 2016). Similarly, "[a]n injunction is a type of remedy . . . as distinct from an underlying claim for relief." *Onyango v. Downtown Entm't, LLC*, 525 F. App'x 458, 460 (7th Cir. 2013).

### b.   Counts II and III – Utah Wage Claims
### (Alera, New Banasky)

Counts II and III bring claims of violations of the Utah Payment of Wages Act and allege that Alera and New Banasky failed to pay Brooks and Jordan wages and final compensation after their employments were terminated (in the case of Jordan) or ended (in the case of Brooks) with New Banasky.

The Utah Payment of Wages Act ("UPWA") sets wage-payment rules, including a rule that an employer may not "withhold or divert part of an employee's wages" without approval. Utah Code Ann. § 34-28-3(6). In 2017, the UPWA granted a private right of action effective May 2017. *See Graystone Funding Co., LLC v. Network Funding, L.P.*, 2022 WL 1073796, at *5 (D. Utah Apr. 8, 2022). Brooks alleges that "[b]etween 2017

and 2021, he made dozens of requests by text message, phone, email, and in-person for an accurate audit and accounting of his commissions," and "between 2017 and 2020, the Alera-Banasky Defendants improperly held at least $150,000 per year in commissions generated by Brooks, and at least $30,000 for 2021, for a total of at least $480,000." (Countercl. ¶¶ 45-46). Jordan alleges that after he noticed that his commission reports were "inaccurate" in several respects, New Banasky conceded that it had failed to pay proper commissions for 2021. (*Id.* ¶¶ 57-59). When Jordan "requested an additional audit of his commissions for the years 2017, 2018, 2019, and 2020," Counter-Defendants terminated him. (*Id.* ¶¶ 60-62).

Alera and New Banasky argue that Counts II and III should be dismissed against them for failure to state a claim upon which relief could be granted under Rule 12(b)(6) because the Counter-Complaint fails to allege supporting facts. Specifically, Alera and New Banasky cite *Hirst v. Skywest, Inc.* in arguing that plaintiffs are required to provide "sufficient factual context to raise a plausible inference that there was at least one workweek in which [they were] underpaid." 910 F.3d 961, 966 (7th Cir. 2018). *Hirst* dealt with FLSA minimum wage violations, not the UPWA. The Court has not found a case suggesting that Brooks's or Jordan's pleadings are insufficient at the motion to dismiss stage for a UPWA claim, nor do Counter-Defendants supply one. Hence, Counts II and III against Alera and New Banasky remain.

- 26 -

c. *Count IV – Retaliatory Termination*
*(Alera, New Banasky)*

Count IV fails under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. A prima facie case of wrongful discharge requires the employee show: "(i) that his employer terminated him; (ii) that a clear and substantial public policy existed; (iii) that the employee's conduct brought the policy into play; and (iv) that the discharge and the conduct bringing the policy into play are causally connected." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 404 (Utah 1995). The Utah Supreme Court has identified four categories of public policy that may provide a basis for a wrongful termination claim, none of which Brooks and Jordan reference or rely on: "(i) refusing to commit an illegal or wrongful act, such as refusing to violate the antitrust laws; (ii) performing a public obligation, such as accepting jury duty; (iii) exercising a legal right or privilege, such as filing a workers' compensation claim; or (iv) reporting to a public authority criminal activity of the employer." *Richards v. Wyndham Vacation Ownership, Inc.*, 2018 WL 354682, at *2 (D. Utah. Jan. 10, 2018).

Jordan alleges he was fired for requesting an audit of his commissions as an insurance agent. Jordan does not cite to any statute, constitutional provision, or case law that defines the public policy at issue nor can the Court discern one. Under *Ryan*, "[a] public policy is 'clear' only if plainly defined by legislative enactments, constitutional standards, or judicial decisions." *Ryan*, 972 P.2d at 405 (citation omitted). *Cf Defeudis v. Wolfenden*, 2014 WL 2559443, at *3 (D. Utah, June 6, 2014). Absent this information,

Jordan has inadequately pled a cause of action for wrongful termination in violation of public policy. *Id*. This count is dismissed with prejudice.

### d. Count VII – Tortious Interference (Alera, New Banasky)

The tortious interference claims allege that Ryan Banasky, Scott Lifferth, Old Banasky, New Banasky and Alera used improper means to interfere with client and other business relationships of Brooks and Jordan after they left their employment at New Banasky. The Court dismissed this claim as against Old Banasky, Scott Lifferth, and Ryan Banasky. *Supra* at 24.

Alera and New Banasky move to dismiss this claim under 12(b)(6) for failure to state a claim and under Rule 12(b)(1) for lack of subject matter jurisdiction. The Court finds both arguments fail, and the claim can stand as is against Alera and New Banasky. "[T]o win a tortious interference claim under Utah law, a plaintiff must now prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff." *Surgenex, LLC v. Predictive Therapeutics, LLC*, 462 F. Supp. 3d 1160, 1178 (D. Utah 2020) (citing Utah caselaw). Here, Brooks and Jordan allege that individual agents of New Banasky and Alera made knowingly false statement to specific clients of Brooks and Jordan that they did not have valid insurance licenses, that they were at risk of being incarcerated, and that they had committed insurance malpractice, among other things, with the purpose of separating the Houghtons from their clients. Brooks and Jordan allege they suffered loss of business opportunities, reputational harm, and loss of goodwill and

suffered damages in the form of lost profits, and loss of commissions, for example. They also allege that New Banasky and Alera transferred its worker compensation insurance coverage away from one of Jordan's clients as punishment for conducting business with Jordan. (Countercl. ¶¶ 149-150).

New Banasky and Alera argue that the tortious interference claim fails under 12(b)(6) because it fails to plead damages with particularity. Brooks and Jordan respond that neither Utah nor Illinois requires parties to plead tortious interference with particularity under Rule 9(b) and that the less stringent *Iqbal/Twombly* plausibility standard applies. Both the Seventh and Tenth Circuits hold that claims that "sound [ ] in fraud" may implicate Rule 9(b)'s heightened pleading standard. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *see also U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006) (applying FED. R. CIV. P. 9(b) to False Claims Act claims); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1210 (10th Cir. 2000) (applying FED. R. CIV. P. 9(b) to securities fraud claims). Brooks's and Jordan's tortious interference claim alleges that Alera's actions were "willful and malicious," and that the actions were taken "with an improper purpose and the intention of separating the Houghtons from their clients and insurance brokers." (Countercl. ¶¶ 151, 155). Because the claim sounds in fraud, Brooks and Jordan must plead the "who, what, when, where, and how" of the claim. *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 926 (7th Cir. 2024). Brooks and Jordan specify client relationships disrupted by Alera's conduct and specify alleged false statements made by agents of Alera to specific clients. The Court finds this to be a sufficiently pled Tortious

Interference claim at this stage. *See IHC Health Servs. Inc. v. ELAP Servs., LLC*, 2018 WL 4688358, at *7 (D. Utah Sept. 28, 2018) (permitting damages pled generally to suffice at motion to dismiss for tortious interference claim sounding in fraud).

Alera also moves to dismiss Count VII under 12(b)(1) for lack of subject matter jurisdiction. They argue that the tortious interference claim focuses on different conduct than Alera's breach of contract claims and does not arise from the same common nucleus of operative facts as the underlying contract claims. As stated earlier, this Court has supplemental jurisdiction over compulsory counterclaims, which are "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction does not extend to a permissive counterclaim. *Therkildsen*, 209 F.3d at 651. Thus, the jurisdictional analysis hinges on whether Brooks's and Jordan' tortious interference claim is compulsory.

The Court finds that it is. Alera's breach of contract claims center on conduct taken by Brooks and Jordan after leaving employment at New Banasky and on their client relationships at this time. Brooks's and Jordan's tortious interference claim centers on conduct taken by New Banasky and Alera in this same time period and relates to conduct that allegedly interfered with presumably some of the same client relationships of Brooks's and Jordan's underling Alera's claims. No doubt Alera's defenses to the tortious interference claim will sound in its legal rights and interests granted by the restrictive covenants, and in Brooks's and Jordan's violations of these contracts. This is not all that different from the facts in *Adam Street Joint Venture v. Harte*, 231 F. Supp. 2d 759 (N.D.

Ill. 2002). In *Harte,* the defendant's employers sued him for RICO violations, fraud, conversion, and breach of fiduciary duty, all based on their belief that he wrongfully diverted funds during his employment. *Id*. at 760. Defendant then counterclaimed for breach of contract stemming from his employers' failure to pay him for his work. *Id.* The Court found supplemental jurisdiction over the employee's counterclaims, holding that both parties' allegations rested on the employee's conduct leading up to his resignation and that the employers may have believed the employee's allegedly wrongful diversion of money excused them from honoring their contractual obligations. *Id*. at 763. The Court also found that "[b]oth the plaintiffs' and the defendant's claims require the Court to examine the nature of the relationship between [employee] and his employers." *Id.* Here, while the outcome of Alera's claims do not depend upon the outcome of the tortious interference claims, it is possible the tortious interference claims will depend on the outcome of Alera's claims. Further, the Court will likely need to examine the same conduct for both claims: Brooks's and Jordan's alleged misconduct after leaving New Banasky, and their obligations under the restrictive covenants with Alera.

Nor does the Court find that any exceptions apply that would influence the Court to decline exercising supplemental jurisdiction over the claim under 28 U.S.C. § 1367(c). This is not a novel or complex issue of state law; the claim would not substantially predominate over Alera's claims; the Court has not dismissed all claims over which it has original jurisdiction; and there are no exceptional circumstances justifying declining jurisdiction. 28 U.S.C. § 1367(c). As none of the four conditions are present warranting

dismissal under § 1367(c), and the counterclaim invokes supplemental jurisdiction under § 1367(a), the Court will exercise jurisdiction over this claim.

### e. Count VIII – Conspiracy
#### (New Banasky, Alera)

Count VIII of the Counter-Complaint alleges that Ryan Banasky and Scott Lifferth, acting on behalf of Old Banasky, New Banasky, and Alera, coordinated an unlawful campaign to deprive Jordan, Brooks, and Strategic of money they were owed. (Countercl. ¶ 160). This claim was already dismissed against Ryan Banasky and Scott Lifferth on personal jurisdiction grounds, *supra* at 24–26. That alone justifies the dismissal of this claim as against New Banasky and Alera because as Alera's subsidiary, New Banasky could not have engaged in conspiracy with its parent company. Courts in both this district and the District of Utah recognize an intra-corporate conspiracy doctrine that precludes a conspiracy from existing solely between members of the same entity. *Lyttle v. Killackey*, 528 F. Supp. 2d 818, 832 (N.D. Ill. Nov. 20, 2007); *see also Podium Corp. Inc. v. Chekkit Geolocation Servs., Inc.*, 2021 WL 5772269, at *6 (D. Utah Dec. 6, 2021) ("acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation") (citation omitted). The intra-corporate conspiracy doctrine has been "widely accepted among various state and federal jurisdictions." *Cox v. Cache Cnty.*, 2013 WL 4854450, at *4 (D. Utah, Sept. 11, 2013). Thus, even if the claim was not dismissed against Ryan Banasky and Scott Lifferth, because they each worked for either Old Banasky or New Banasky at any given time, the intra-corporate conspiracy doctrine would preclude the conspiracy claim regardless.

Contrary to Brooks's and Jordan's argument otherwise, the "independent personal stake" exception does not apply. The intra-corporate conspiracy doctrine does not apply where an employee or officer of a corporation has an independent personal stake in achieving the corporation's illegal objectives. *Id.* at *6. however, the exception "does not mean that the intra-corporate conspiracy doctrine is inapplicable any time an employee would benefit from illegal action taken on behalf of a corporation." *Id.* Instead, the benefit must be "wholly separable" from the corporate benefit. *Id.* Brooks and Jordan do not demonstrate how Scott Lifferth and Ryan Banasky's interests diverged from Old Banasky's and New Banasky's corporate benefits. The claim is dismissed with prejudice under Rule 12(b)(6).

## IV.    **CONCLUSION**

For the reasons stated herein, Counter-Plaintiffs' Motion to Transfer is DENIED. Counter-Defendants' Motions to Dismiss are GRANTED IN PART and DENIED IN PART. The Court dismisses the following claims with prejudice:

1. Counterclaim I (Declaratory Judgment) against Alera.

2. Counterclaims and Third Party Claims II and III (Utah Payment of Wages Act) against Old Banasky, Ryan Banasky, and Scott Lifferth for lack of personal jurisdiction.

3. Counterclaim and Third Party Claim IV (Retaliatory Termination) against Ryan Banasky, Scott Lifferth, New Banasky, and Alera for lack of personal jurisdiction and failure to state a claim.

4. Third-Party Claim V (Fraud) against Old Banasky, Ryan Banasky, and Scott Lifferth for lack of personal jurisdiction and subject matter jurisdiction.

5. Third-Party Claim VI (Promissory Estoppel) against Old Banasky, Ryan Banasky, and Scott Lifferth for lack of personal jurisdiction and subject matter jurisdiction.

6. Third-Party Claim VII (Tortious Interference) against Old Banasky, Ryan Banasky, and Scott Lifferth for lack of personal jurisdiction.

7. Counterclaim and Third Party Claim VIII (Conspiracy) against Old Banasky, Ryan Banasky, Scott Lifferth, New Banasky and Alera for lack of personal jurisdiction and failure to state a claim.

The following claims remain before the Court:

1. Alera's Counts I and II (Breach of Contract) against Brooks and Jordan.

2. Counterclaims II and III (Utah Payment of Wages Act) against New Banasky and Alera.

3. Counterclaim VII (Tortious Interference) against New Banasky and Alera.

**IT IS SO ORDERED.**

_____

Harry D. Leinenweber, Judge
United States District Court

Dated: 3/5/2024

- 34 -